# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DERRICK FULTON,

                                        Petitioner,

            v.

                                                            9:12-CV-672
DAVID ROCK, Superintendent                                  (MAD/ATB)

                                        Respondent.

DERRICK FULTON, Plaintiff, pro se
LISA E. FLEISCHMANN, AAG, for the Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Mae A. D'Agostino, United States District Judge.

Presently before this court is an amended petition, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Amended Petition ("Am. Pet.")) (Dkt. No. 7). Petitioner brings this action, challenging a judgment of conviction rendered on August 8, 2008, after a jury trial in the Oneida County Court. Petitioner was convicted of two counts of Burglary, First Degree; one count of Robbery, First Degree; and two counts of Robbery, Second Degree. Petitioner was sentenced to 20 years imprisonment with five years of post release supervision on each of the two Burglary counts and 15 years to life imprisonment with five years of post release supervision on each of the two second degree Robbery counts, to be served concurrently. For the single count of first degree Robbery, petitioner was sentenced to 20 years imprisonment with five years of

post release supervision, to be served consecutively to the other prison terms.

Petitioner's conviction was affirmed by the Appellate Division, Fourth Department on April 30, 2008, and the New York Court of Appeals denied leave to appeal on December 14, 2010. *People v. Fulton*, 72 A.D.3d 1609, 899 N.Y.S.2d 705 (4th Dep't), *aff'd*, 15 N.Y.3d 952, 917 N.Y.S.2d 112 (2010). On October 5, 2011, petitioner filed a motion to vacate his conviction in Supreme Court, Oneida County Court pursuant N.Y. Crim. Proc. Law § 440.10. (Respondent's ("Resp't") Ex. F). On December 20, 2011, Acting Supreme Court Justice, Barry M. Donalty denied petitioner's motion to vacate, and on March 19, 2012, the Appellate Division, Fourth Department denied leave to appeal Justice Donalty's decision. (Resp't's Exs. I, K). Petitioner filed his original petition for habeas corpus in this court on April 23, 2012.[1] On May 17, 2012, Judge D'Agostino ordered petitioner to file an amended petition, and petitioner filed the amended pleading on May 25, 2012. (Dkt. No. 7).

Petitioner raises the following claims for this court's review:[2]

---

[1] Although there is no issue of timeliness in this case, the court notes that the petition would have been deemed filed on April 18 or 19, 2012, the date that petitioner signed his petition or the date that he mailed the petition from the facility. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (a pro se prisoner "files" his federal notice of appeal from a denial of habeas relief when he submits his papers to prison authorities for forwarding to the circuit court); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (applying prison mailbox rule to prisoner filing initial federal habeas petition with district court).

[2] Because the amended petition does not contain a section entitled "grounds for relief," Judge D'Agostino interpreted the petition as raising three specific claims. (Dkt. No. 9 at 2). In a footnote, Judge D'Agostino stated that if petitioner believed he had asserted claims other than those referenced in the Judge's order, he was ordered to notify the court within 20 days of receipt of the order. *Id.* Petitioner did not do so, and respondent answered accordingly. (Dkt. Nos. 14-16). Thus, the listed grounds are the operative claims in this petition.

(1)     He was denied his right to a fair trial due to the court's *Sandoval*[3] ruling.

(2)     The imposition of consecutive sentences was "unconstitutional."

(3)     Trial counsel was ineffective by failing to properly discuss a plea proposal with petitioner.

Respondent has filed an answer and memorandum of law in opposition to the petition together with copies of the pertinent state court records. (Dkt. Nos. 14-16). For the following reasons, this court agrees with respondent and will recommend denial of the petition.

## DISCUSSION

## I.   Relevant Facts

### A.   Trial

On December 26, 2007, prior to the incident which formed the basis for petitioner's conviction, petitioner and his girlfriend Natasha Pearson ("Pearson") were home packing and preparing to move into a new apartment. (Trial Transcript (T. 442-49 – Pearson). Two of petitioner's friends came to the apartment and had an "intense" discussion with petitioner. (T. 443-44). One of the visitors gave petitioner a gun, but told petitioner that they did not want to "be involved," because they knew the individual who lived in the apartment "they were supposed to be going to." (T. 445).

After the visitors left, petitioner commented to Pearson that the visitors were "cowards," but that "he didn't need them anyway." (T. 446). He and Pearson then left

---

[3] In a hearing pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), the court determines whether, and to what extent, the prosecutor may cross-examine a defendant about his or her previous criminal convictions and prior bad acts if the defendant chooses to testify.

the apartment and walked to a store, to get more boxes for packing. (T. 446-50).

Petitioner was wearing a black baseball cap, a red and white Philadelphia Phillies

baseball jacket, and he had a handkerchief, decorated with dollar signs, around his

neck. (T. 453-56). While they were outside the store, petitioner and Pearson met

Aaron Ballard ("Ballard"), who was related to the petitioner's sister. (T. 374-76 –

Ballard; 450-51 – Pearson). Petitioner asked Ballard if he knew where petitioner

could purchase some marijuana, and Ballard testified that he told petitioner: "not right

now at this time, no," but instead invited petitioner and Pearson back to Ballard's

nearby apartment, where they all smoked marijuana. (T. 378-79 – Ballard, 451-53 –

Pearson). Although Ballard was unclear in his testimony,[4] Pearson testified that while

they were in Ballard's apartment, Ballard told petitioner that he bought his supply

from a man across the street. (T. 453, 459). Pearson also testified that petitioner asked

Ballard, and Ballard told petitioner, exactly where he purchased the marijuana, how

many people lived there, and who would be answering the door. (T. 459).

After Ballard and petitioner finished smoking the marijuana,[5] petitioner and

Pearson left Ballard's apartment and entered the building across the street. (T. 453,

458). They went to the apartment of Derrick Craft ("Craft"), who lived on the second

---

[4] Ballard testified that, while they were all standing outside, petitioner asked Ballard if he knew where petitioner could purchase some "weed". (T. 378-80). Ballard stated that he told petitioner "no, not right now at this time," but that Ballard had a "blunt" that they could smoke back at his apartment. (T. 378, 380). Although Ballard testified that he *assumed* the individual across the street (Derrick Craft) was dealing marijuana at the time (T. 381), he never admitted on the witness stand that he told petitioner that Ballard purchased the "weed" they were smoking from Craft.

[5] Pearson testified that she did not smoke any marijuana that night at Ballard's apartment. (T. 453).

4

floor with his girlfriend, Christine Suppa ("Suppa") and her five children. (T. 139-42 – Craft; 458 – Pearson). Pearson testified that she had seen Craft before because, although she had never been to his apartment, she purchased marijuana from him on the street in the past. (T. 456-58). Petitioner was wearing a bandana covering most of his face, but Pearson's face was exposed. (T. 471-72). Petitioner knocked on the door, and when Craft opened the door, petitioner pointed the gun at him. (T. 143-45 – Craft; T. 462 – Pearson). Petitioner forced his way into the apartment and began striking Craft with the gun, while asking him "where it's at." (T. 146-49 – Craft; T. 463– Pearson).

Pearson entered the apartment behind petitioner and stood at the door of a bedroom/living room, where Suppa was screaming. (T. 465, 468 – Pearson). Petitioner continued to strike craft with the gun, forcing him further into the apartment. (T. 152-53 – Craft). One of the blows knocked open the cylinder of the gun, causing the bullets to fall out. (T. 152-55 – Craft). Petitioner continued to ask Craft "where's it at," until Craft pointed to a leather coat, containing $200.00 and some small bags of marijuana in the pocket. (T. 155-56). Petitioner took the coat, and he and Pearson fled down a flight of stairs toward the street. (T. 158, 162). Craft identified the petitioner at trial. (T. 159).

By the time that petitioner and Pearson left the apartment, petitioner's face was no longer covered by the bandana. (T. 473-74 – Pearson). A neighbor, Alicia Levitt ("Levitt"), was getting ready to take a shower, when she heard children screaming and

thumping sounds coming from Craft's[6] apartment. (T. 400, 404-406 – Levitt). When the noise got louder, she decided to go across the hall and see if everything was "okay." (T. 405). When she opened her front door, she saw petitioner and Pearson leaving the apartment, both with their faces uncovered. (T. 407-408). Petitioner was wearing a red and white jacket and was carrying a brown jacket, which Levitt recognized as belonging to Craft. (T. 407-10). Petitioner and Pearson returned to their own apartment, where Pearson continued packing. (T. 476). Although petitioner did not have the leather jacket when he got home, and Pearson did not see petitioner go through the pockets of the jacket, petitioner showed Pearson a sandwich bag filled with marijuana. (T. 474-76 – Pearson). Petitioner separated the marijuana into smaller bags. (T. 473-77).

Utica police officers arrived at Craft's apartment soon after the incident and recovered .38 caliber bullets from the floor. (T. 363-65 – Officer Stanley Fernalld). Petitioner was arrested three weeks after the incident. At petitioner's preliminary hearing, Craft and Levitt recognized Pearson in the courtroom and identified her as petitioner's accomplice. (T. 168-69 – Craft; 416-19 – Levitt). Pearson was arrested the same day. (T. 169 – Craft; 480 – Pearson). After Pearson was arrested, she agreed to testify against petitioner as a condition of her plea agreement.[7] (T. 479-80).

---

[6] Ms. Levitt also testified that she knew the victim by his nickname, "Dre." (T. 401).

[7] Pearson appeared before the Grand Jury, but testified at trial that she lied to the Grand Jury about being involved in the crime. (T. 482). After the Grand Jury appearance, a plea was discussed with Pearson, and she ultimately pled guilty to Burglary, Second Degree, for which she was sentenced to five years imprisonment and five years post-release supervision. (T. 484-85).

Prior to trial, petitioner was offered a plea (T. 3), which he ultimately rejected, after two adjournments.[8] The court then held both a *Sandoval* hearing and a *Wade*[9] hearing. Both hearings were resolved against petitioner. In particular, after the *Sandoval* hearing, the court found that if petitioner took the stand to testify, the prosecution could inquire into the facts of various prior crimes committed by the petitioner. The court ruled that the prosecution could ask petitioner about the underlying facts of a 1992 youthful offender adjudication; a 1998 weapons possession conviction, together with the underlying facts of the 1998 case; and the fact of his 2002 felony drug possession conviction. The court found that these charges reflected petitioner's willingness to place his own interests above those of society. (T. 14-15). The court precluded any inquiry into a 1998 misdemeanor drug conviction. Petitioner opted not to testify at trial.

The trial lasted three days, and the witnesses against petitioner included Craft (T. 138-243); Suppa (T. 270-324); Pearson (T. 435-514); Levitt (T. 397-435); one of Ms. Suppa's children (T. 324-340); Ballard (T. 371-397); and Patrolmen Shawn Ruddy and Stanley Fernalld from the Utica Police Department (T. 340-70). The prosecutor also introduced petitioner's own Grand Jury testimony against him through

---

[8] It is clear from the transcript of petitioner's arraignment that a plea bargain offer had been extended to petitioner. (T. 3). Judge Donalty further stated that he was going to grant an adjournment so the offer could be considered by the petitioner and his attorney and "for a report on the offer." (*Id.*) In his decision on the petitioner's section 440.10 motion to vacate, Judge Donalty stated that petitioner's counsel requested two adjournments, and that "on March 26, 2008, the defendant rejected the offer." (Resp.'s Ex. I, § 440.10 decision at 3).

[9] A hearing pursuant to *United States v. Wade*, 388 U.S. 218, 232 (1967) assesses whether pretrial identification procedures were unduly suggestive and subject to suppression.

the Grand Jury Court Reporter, Cynthia Belmonte. (T. 244-69).

## B.   Direct Appeal

Petitioner filed his direct appeal through counsel, raising the following issues:

(1)   The trial court's *Sandoval* ruling constituted an abuse of discretion. (Dkt. No. 16-1, Resp't's Ex. A at 15-19).

(2)   The imposition of consecutive sentences was improper. (Resp't's Ex. A at 19-22).

(3)   The petitioner's sentences were unduly harsh and excessive and should be reduced. (Resp't's Ex. A at 22-24).

The prosecutor filed a memorandum of law in opposition to petitioner's appeal. On April 30, 2010, the Appellate Division, Fourth Department denied petitioner's appeal, finding that he failed to preserve his *Sandoval* claim, and that the sentencing claims had no merit. *People v. Fulton*, 72 A.D.3d 1609, 899 N.Y.S.2d 705 (4th Dep't 2010). The New York Court of Appeals denied leave to Appeal on December 14, 2010.

## C.   Section 440.10 Motion to Vacate

Petitioner filed a pro se motion to vacate his conviction, pursuant to N.Y. Crim. Proc. Law § 440.10. (Resp.s' Ex. F). In his motion, petitioner raised the following claims:

(1)   Petitioner was not afforded effective assistance of counsel during "plea negotiations" because his attorney did not guide him and encourage him to plead guilty in the face of overwhelming proof and a favorable plea bargain.

8

(2)    The Oneida County Department of Corrections interfered with petitioner's ability to consult with counsel because petitioner was forced to meet with his attorney in a public holding area.

(3)    Trial counsel was ineffective when he failed to properly object to the court's *Sandoval* ruling.

On December 20, 2011, Judge Donalty denied petitioner's section 440.10 motion, pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c), finding that petitioner forfeited his ineffective counsel claim because the errors were record-based, and he should have raised the grounds on appeal. (Resp't's Ex. I at 2). In the alternative, Judge Donalty found that petitioner received constitutionally effective assistance of trial counsel in all respects. (*Id.* at 2-5). On March 19, 2012, the Appellate Division, Fourth Department denied petitioner leave to appeal Judge Donalty's decision. (Resp't's Ex. K).

## II.   **Generally Applicable Law**

### A.   **The AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).[10] This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (citations omitted).

Under section 2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

---

[10] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-113 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.*

## B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1).  The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim.  *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'"  *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

## C.    Procedural Bar

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977).  A federal habeas court generally will not consider a federal issue if the last state court decision to

address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

There are certain situations in which the state law ground will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v. Sykes*, 433 U.S. at 87. In *Garvey v. Duncan*, the Second Circuit stated that, in certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can

show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

To demonstrate "actual innocence," a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him, but for the alleged constitutional violation. *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007), *cert. denied sub nom. Murden v. Ercole*, 552 U.S. 1150 (2008); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "Actual innocence" requires factual innocence, not "legal" innocence. *Murden v. Artuz*, 497 F.3d at 194. A claim of actual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial. *Cabezudo v. Fischer*, 05-CV-3168, 2009 WL 4723743, at *13 (E.D.N.Y. Dec. 1, 2009) (citing *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)); *Schlup v. Delo*, 513 U.S. at 316, 327-328.

## III.  *Sandoval* Ruling

Respondent argues that the petitioner has not exhausted his *Sandoval* claim in state court, that it is barred by procedural default, and is in any event, non-cognizable in federal court. (Resp.'s Mem. of Law at 17-23) (Dkt. No. 14). Respondent is correct on each argument.

In petitioner's brief on direct appeal, his attorney raised the *Sandoval* claim, arguing that Judge Donalty's *Sandoval* ruling was "an abuse of the Court's

discretion." (Resp't's Ex. A at 15). Petitioner's counsel cited only state law cases that were decided based upon state law evidentiary principles. Counsel concluded his argument by stating that Judge Donalty's ruling denied petitioner a "fair trial." (*Id.* at 18). The prosecutor also cited only New York State cases, based upon state law evidentiary principles. (Resp.'s Ex. B at 12-17). Petitioner did not employ any of the methods articulated in *Daye, supra* to alert the state court to the federal constitutional nature of his claim.

Petitioner now argues that his "constitutional" rights were violated as a result of that ruling. (Am. Pet. at 6). To the extent that petitioner is now attempting to raise a federal constitutional argument where he did not do so in state court, his *Sandoval* claim is "unexhausted."

Petitioner cannot return to state court to attempt to exhaust a "federal constitutional version" of this claim. Petitioner has already raised the *Sandoval* claim on appeal as a purely state law question, arguing that the trial court abused its discretion. When petitioner raised the *Sandoval* claim on direct appeal, the Appellate Division specifically held that "[b]y failing to object to County Court's ultimate *Sandoval* ruling, defendant failed to preserve for our review his contention that the ruling constitutes an abuse of discretion." 72 A.D.3d at 1609 (citations omitted). The court also specifically declined to address the issue "in the interest of justice" pursuant to N.Y. Crim. Proc. Law § 470.15(6)(a).

Dismissal based upon the failure to preserve a claim with a contemporaneous objection is an established, and regularly followed procedural rule that constitutes an

adequate and independent state basis for denying petitioner's claim. *See Smith v. Lee*, No. 11 Civ. 8736, 2013 WL 2467988, at *11-12 (S.D.N.Y. June 7, 2013) (citing *inter alia Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) (the second circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules.")). *See also* N.Y. Crim. Proc. Law § 470.05(2) (codifying the preservation rule – a claim of error may be preserved by making a specific protest at a time when the trial court has the opportunity to correct the alleged error or by the court expressly deciding the issue in response to a protest by the party claiming error on appeal).

An exception exists if an "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). The adequacy of the procedural bar is determined with reference to the particular application of the rule. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003). In *Cotto*, the court articulated three factors as "guideposts," to be used in evaluating the state interest in a procedural rule against the circumstances in a particular case. *Id.* A court considers (1) whether the trial court actually relied upon the alleged procedural violation and whether "perfect compliance" would have changed the trial court's decision"; (2) whether state case law dictated that compliance with the rule was demanded in the specific circumstances; and (3) whether the petitioner "substantially complied" with the rule given "the realities of trial. *Id.*

In this case, although petitioner requested, and the court held, a *Sandoval* hearing to determine whether and to what extent his prior crimes and bad acts would be possible subjects for cross-examination should he take the stand, the Appellate

Division found that his failure to object to the court's "ultimate ruling" constituted the procedural default. Petitioner clearly failed to object to the court's ultimate ruling, even though counsel made the *Sandoval* motion in the first instance. (T. 14 - counsel's argument; 15-16 - court's decision). Thus, petitioner did not substantially comply with the rule requiring a contemporaneous objection. If petitioner had properly complied with the requirement, it could have changed the trial court's decision, or at least, a record would have been made for the appellate court to review.

State law is well-settled that in order to preserve a *Sandoval* issue for appeal, the defendant must object to the ultimate ruling. *See People v. Caswell*, 49 A.D.3d 1257, 1258, 856 N.Y.S.2d 338 (4th Dep't 2008) (citing *People v. Brown*, 39 A.D.2d 1207, 834 N.Y.S.2d 766 (4th Dep't), *lv. denied*, 9 N.Y.3d 921 (2007); *People v. Alston*, 27 A.D.3d 1141, 1141-42, 811 N.Y.S.2d 251 (4th Dep't), *lv. denied*, 6 N.Y.3d 892 (2006)). Thus, state law dictates that compliance with the rule is mandated in this situation, and a balancing of the *Cotto* factors weighs in favor of finding procedural default.

Having found a procedural default, this court also finds that petitioner has shown neither cause nor prejudice for failing to object to the courts ultimate ruling. Additionally, there is no issue of actual innocence because petitioner is arguing only that he should have been encouraged to plead guilty in the face of overwhelming evidence. Thus. petitioner's *Sandoval* claim may be dismissed due to his procedural default.

The court also notes that an alternative basis for dismissing the *Sandoval* issue

exists because *Sandoval* is based only upon New York state law and does not implicate the federal constitution, particularly because the petitioner did not testify at trial. As such the *Sandoval* claim is not cognizable in a federal habeas corpus action. *See Lopez v. Unger*, 2010 WL 3937190, at *4 (E.D.N.Y. Sept. 30, 2010) (citing *Luce v. United States*, 469 U.S. 38, 43 (1984); *Grace v. Artuz*, 258 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2003)).

## IV.  Sentencing

An excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  In order to raise a constitutional claim, a petitioner must show that the trial court's sentencing decision amounted to an improper "arbitrary or capricious abuse of discretion" that deprived the petitioner of his liberty. *Herrera v. Artuz*, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001).  The imposition of consecutive sentences violates the Eighth Amendment "'only under extraordinary circumstances.'" *Id.* (quoting *Salcedo v. Artuz*, 107 F. Supp. 2d 405, 414 (S.D.N.Y. 2000)).

Petitioner raised this claim on direct appeal pursuant to N.Y. Penal Law § 70.25 (2), arguing that the consecutive sentence was "illegal" under the statute.[11] (Resp.'s

---

[11] The court notes that petitioner raised two challenges to his sentencing in the Appellate Division.  In addition to alleging that the consecutive sentences were improper, he also claimed that the sentences in general were "harsh and excessive."  In this second ground for relief, petitioner's counsel did state that he was bringing the claim under **both** the federal and the state constitutions. (Resp.'s Ex. A at 24).  Although it is unclear, in this habeas corpus petition, Judge D'Agostino interpreted the amended petition as raising only the first claim that the imposition of consecutive sentences was illegal.  Although petitioner was given the opportunity to state any additional claims,

Ex. A at 20). Although petitioner now claims that this sentence was "unconstitutional," he never raised that claim in state court. In addition to not being "cognizable," the constitutional claim is also "unexhausted" as was petitioner's *Sandoval* claim. To the extent that the court considers the claim "unexhausted," petitioner cannot return to state court to raise a claim that he has already raised on appeal, simply by changing the basis for the claim. He would be barred from doing so in a section 440.10 motion because he unjustifiably failed to raise the issue on appeal, and the argument is record-based. N.Y. Crim. Proc Law § 440.10(2)(c).

Although petitioner could attempt to move to "reargue" his direct appeal, the rules governing motions to reargue state that such motions "shall" be based upon matters of fact or law that were allegedly "overlooked or misapprehended by the court." N.Y. Civ. Prac. L & R Rule 2221. Changing the basis for his sentencing claim does not meet the criteria for a motion to reargue. Because petitioner cannot return to state court, petitioner's claim would then be "deemed" exhausted, but it would be barred by procedural default. Because petitioner raised the basis of his claim on direct appeal, he cannot show cause for his failure to raise the alleged "constitutional" basis of his claim. Therefore, petitioner's sentencing claim may be dismissed as non-cognizable, unexhausted, and procedurally defaulted.

Finally, even if the court were to consider the Eighth Amendment implications

---

he did not do so, and this court will follow Judge D'Agostino's interpretation of the petitioner's grounds for relief.

to consecutive sentences, the result would be the same.[12] The Eighth Amendment is only implicated in state court sentencing if the sentence is barbaric or vastly disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277, 290 (1983). The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence. *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988); *Henry v. Lee*, No. 12-CV-5483, 2013 WL 1909415, at *11 (E.D.N.Y. May 8, 2013).

In this case, notwithstanding the prosecutor's concession on appeal that petitioner's sentences should have run concurrently, the Appellate Division found that the sentences were properly ordered to run consecutively. Among other cases cited for the same proposition, the Appellate Division cited *People v. Yong Yun Lee*, 92 N.Y.2d 987, 989, 684 N.Y.S.2d 161, 706 N.E.2d 1185 (1998). *People v. Fulton*, 72 A.D.2d at 1609 (other citations omitted). In *Yong Yun Lee*, the court considered a similar crime to this petitioner's charges. The court held that notwithstanding that the defendant carried a firearm, the crime of burglary was complete when the defendant entered the office with the intent to commit a crime. *Id.* The actions upon which the subsequent robbery were based constituted separate acts, justifying consecutive sentences under the statute. *Id.*

In this case, petitioner is not claiming that the individual sentences are disproportionate to the crimes charged. He is claiming only that the judge's

---

[12] The court notes that the result would be the same if the court were to assume that petitioner were raising his "exhausted" claim that his sentence was "harsh and excessive" because the sentences for the individual charges were within statutory limits.

imposition of consecutive terms was improper. The Appellate Division based its

decision on the state statute, and petitioner cannot now claim that the sentence was

disproportionate simply because the court ordered the sentences to run consecutively.

## V. Ineffective Assistance of Counsel

Plaintiff's final argument is that his trial attorney was ineffective because he

failed to "allow" petitioner to accept the plea bargain offered by the prosecutor prior to

trial or to "show" petitioner the pros and cons of accepting a plea. Petitioner asks that

the court reverse and remand for an evidentiary hearing relative to counsel's

ineffectiveness. (Am. Pet. at p.6).[13]

Petitioner did not bring this claim on direct appeal. He raised this claim in his

section 440.10 motion to vacate. In Judge Donalty's decision, he dismissed

petitioner's ineffective assistance of counsel claim pursuant to "CPL § 440.10(2)(c)

due to petitioner's "unjustifiable failure to raise such ground or issue upon an appeal

actually perfected by him . . . ." (Dkt. No. 16-9 at CM/ECF p.3). In the alternative,

---

[13] In the face of an uncertain record relating to the effectiveness of counsel in state court proceedings, the Second Circuit has, in the past, remanded a habeas action to the district court for an evidentiary hearing. See, e.g., *Eze v. Senkowski*, 321 F.3d 110, 136-37 (2d Cir. 2003) (remanding for an evidentiary hearing at which defense counsel would be provided an opportunity to explain whether certain acts and omissions relating to his representation of the petitioner were justified by some plausible trial strategy). However, in 2011, the Supreme Court held that habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. at 1398. The Second Circuit has since recognized that *Cullen* precludes the option of a remand to the district court for an evidentiary hearing of the sort ordered in *Eze*. *See Ridgeway v. Zon*, 424 F. App'x 58, 60 (2d Cir. 2011) (although the record before the state court is sparse, it failed to establish conclusively that trial counsel in a child sex abuse case had not consulted a medical expert; thus petitioner has failed to demonstrate that the state court's denial of petitioner's ineffective assistance claim on that basis was an unreasonable application of federal law).

Judge Donalty also found, on the merits, that petitioner's counsel rendered effective assistance throughout the criminal proceedings. (*Id.* at CM/ECF pp.2-5).

In deciding the procedural default issue, Judge Donalty made a factual finding that the allegations made by petitioner were all based on matters in the record. To overcome the state court's factual findings, the petitioner must rebut it with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Judge Donalty outlined the petitioner's appearances, and stated that on March 3, 2008, a pretrial was held "and the matter was adjourned for a report on the [plea] offer."[14] (*Id.* at CM/ECF p.4). Judge Donalty further stated that the matter was adjourned twice at the "defendant's request, and on March 26, 2008, the defendant rejected the offer." (*Id.*)

Although a transcript of the March 26, 2008 proceeding conducted by Judge Donalty is apparently not available, the state court's findings were clearly influenced by what transpired at the hearing. Judge Donalty specifically stated that the petitioner rejected the plea on the record, and as such, the issue should have been raised on appeal. The petitioner never submitted an attorney affidavit supporting his claims that he received no advice about the pros and cons of accepting the People's plea offer. The court concludes that petitioner failed to rebut the state court's factual finding that his claim of ineffective assistance was record based, and defers to that finding.

Judge Donalty specifically dismissed petitioner's claim based on a procedural default, even though he discussed the claim further, and rejected it on the merits. "[I]f a state court holding contains a plain statement that a claim is procedurally barred then

---

[14] This statement implies that the plea offer was made on the day of petitioner's arraignment.

the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative." *Thagard v. Connell*, No. 07-CV-6254, 2010 WL 986490, at *2 (W.D.N.Y. Mar. 17, 2010) (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision)).

The procedural rule requiring record-based claims to be raised first on direct appeal is a firmly established and regularly followed independent state ground for dismissal. The default is codified in the section governing motions to vacate, in mandatory terms. N.Y. Crim. Proc. Law § 440.10(2)(c). *See also Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008); *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003) (application of section 440.10(2)(c) is an adequate and independent state ground as it relates to record-based ineffective counsel claims); *Windley v. Lee*, No. 11 Civ. 1275, at *30-31 (S.D.N.Y. May 16, 2013); *Ely v. Lempke*, No. 09 Civ. 5836, 2012 WL 7050432, at *21 (S.D.N.Y. Oct. 18, 2012) (there can be no question that section 440.10(2)(c) constitutes an adequate and independent state ground for the denial of petitioner's claims) (Rep't-Rec), *adopted*, 2013 WL 544070 (S.D.N.Y. Feb. 11, 2013).

Section 440.10(2)(c) will not always be appropriate in ineffective assistance cases in which the facts supporting the ineffective assistance claim fall outside the record. *Cruz v. Berbary*, 456 F. Supp. 2d 410, 414 (W.D.N.Y. 2006) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). In this case, however, the trial court specifically found that the petitioner's claim was record-based, and this court finds

that the trial court's application of the procedural bar was an adequate and independent basis for dismissal of the claim. There is no indication that the application of the procedural default was "exorbitant."

Petitioner cannot show cause or prejudice for failing to raise his ineffective counsel claim. He had a new attorney on appeal, and the new attorney could have claimed that the record showed that petitioner was not told about the "pros and cons" of taking the plea offer. The fact that petitioner received a longer sentence after being convicted at trial does not indicate that his attorney failed to tell him of the pros and cons of taking the plea he was offered. There is nothing to show that this claim was unavailable to petitioner at the time he filed his direct appeal. As stated above, actual innocence is not an issue because petitioner is merely asking to court to allow him the benefit of the plea bargain that he rejected prior to trial. Because there is no issue of innocence, there is no fundamental miscarriage of justice. *See Sweet*, 353 F.3d at 141 (a miscarriage of justice means that the defendant is actually innocent). Thus, petitioner's ineffective assistance of counsel claim is procedurally barred and may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 14, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge