**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DERRICK FULTON,**

                                        **Petitioner,**

        **vs.**                                                  **9:12-CV-672**
                                                                    **(MAD/ATB)**

**DAVID A. ROCK, Superintendent,**

                                        **Respondent.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**DERRICK FULTON**
**08-B-2651**
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**               **LISA E. FLEISCHMANN, AAG**
**STATE ATTORNEY GENERAL**               **PAUL M. TARR, AAG**
120 Broadway
New York, New York 10271
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Derrick Fulton, ("Petitioner"), currently incarcerated in Five Points Correctional Facility

in Romulus, New York, Dkt. No. 16–1 at 19, brings this action as a _pro se_ litigant seeking a writ

of _habeas corpus_, pursuant to 28 U.S.C § 2254.  Dkt. No. 7.  Petitioner claims that he was denied

his right to a fair trial, the state court imposition of consecutive sentences was unconstitutional,

and he received ineffective assistance of counsel.[1]  Presently pending are Petitioner's objections,

to the Report-Recommendation issued by Magistrate Judge Andrew T. Baxter, recommending

that the Court deny the petition.  Dkt. No. 19.  Respondent has not submitted to the court any

filings in opposition of Petitioner's objections.


## II. BACKGROUND

**A.    State Court Procedural History**

Petitioner was convicted on August 8, 2008, after a jury trial in the Oneida County Court.

Petitioner was convicted of two counts of Burglary in the First Degree; one count of Robbery in

the First Degree; and two counts of Robbery in the Second Degree.  Upon conviction, Petitioner

was sentenced to twenty years imprisonment with five years of post-release supervision on each

of the two Burglary counts and fifteen years to life imprisonment with five years of post-release

supervision on each of the two counts of Robbery in the Second Degree, to be served

concurrently.  For the single count of Robbery in the First Degree, Petitioner was sentenced to

twenty years imprisonment with five years of post-release supervision, to be served consecutively

to the other prison terms.  Petitioner's conviction was affirmed by the Appellate Division, Fourth

Department on April 30, 2008, and the New York Court of Appeals denied leave to appeal on

December 14, 2010.  *People v. Fulton*, 72 A.D.3d 1609, 899 N.Y.S.2d 705 (4th Dep't), *aff'd*, 15

N.Y.3d 952, 917 N.Y.S.2d 112 (2010).

On October 5, 2011, Petitioner filed a motion to vacate his conviction in Supreme Court,

---

[1] In light of Petitioner's *pro se* status, this Court previously interpreted Petitioner's
amended petition to allege the mentioned claims.  Dkt. No. 9 at 2. Petitioner was given twenty
days to notify the Court if he believed he had asserted any other claims. *See id.* at 2 n.2. Petitioner
did not respond.

Oneida County pursuant N.Y. Crim. Proc. Law § 440.10.  Dkt. No. 16–6 at 2.  On December 20,

2011, Acting Supreme Court Justice Barry M. Donalty denied Petitioner's motion to vacate, and

on March 19, 2012, the Appellate Division, Fourth Department denied leave to appeal Justice

Donalty's decision.  (Dkt. Nos. 16-9, 16-11).  Petitioner filed his original petition for habeas

corpus in this Court on April 23, 2012.

On May 17, 2012, this Court ordered Petitioner to file an amended petition, and Petitioner

filed the amended pleading on May 25, 2012.  Dkt. No. 5 at 4–5; Dkt. No. 7 at 1.  Pursuant to 28

U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c), this Court referred this matter to Magistrate

Judge Andrew T. Baxter.  Petitioner had raised the following claims for review: (1) he was denied

his right to a fair trial due to the court's *Sandoval* ruling; (2) the imposition of consecutive

sentences was "unconstitutional;" and (3) trial counsel was ineffective by failing to properly

discuss a plea proposal with Petitioner.  Dkt. No. 9 at 2.


**B.      Facts**

On December 26, 2007, Petitioner and his girlfriend, Natasha Pearson ("Pearson"), were

home packing and preparing to move into a new apartment.  Dkt. No. 16–14 at 136.  Two of

Petitioner's friends came to the apartment and had an "intense" discussion with Petitioner.  *Id.* at

137–38.  One of the visitors gave Petitioner a gun, but told Petitioner that they did not want to "be

involved," because they knew the individual who lived in the apartment "they were supposed to

be going to."  *Id.* at 138–39.

After the visitors left, Petitioner commented to Pearson that the visitors were "cowards,"

but that "he didn't need them anyway."  *Id.* at 140.  Petitioner and Pearson then left the apartment

and walked to a store, to get more boxes for packing.  *Id.* at 140–44.  Petitioner was wearing a

black baseball cap, a red and white Philadelphia Phillies baseball jacket, and a handkerchief, decorated with dollar signs, around his neck. *Id.* at 147–50. While they were outside the store, Petitioner and Pearson met Aaron Ballard ("Ballard"), who was related to Petitioner's sister. *Id.* at 68, 144–45. Petitioner asked Ballard if he knew where he could purchase some marijuana, and Ballard testified that he told Petitioner "no, not right now at this time" but instead invited Petitioner and Pearson back to his nearby apartment, where they all smoked marijuana. *Id.* at 73–74, 155–57.

Although Ballard was unclear in his testimony, Pearson testified that while they were in Ballard's apartment, Ballard told Petitioner that he bought his supply of marijuana from a man across the street. *Id.* at 147, 153. Pearson also testified that Petitioner inquired of Ballard exactly where he purchased the marijuana, how many people lived there, and who would be answering the door, and that Ballard provided the information requested. *Id.* at 153. After Ballard and Petitioner finished smoking the marijuana, Petitioner and Pearson left Ballard's apartment and entered the building across the street. *Id.* at 147, 152. They went to the apartment of Derrick Craft ("Craft"), who lived on the second floor with his girlfriend, Christine Suppa ("Suppa") and her five children. Dkt. No. 16–13 at 152; Dkt. No. 16–14 at 177–80. Pearson testified that she had seen Craft before because, although she had never been to his apartment, she purchased marijuana from him on the street in the past. Dkt. No. 16–14 at 150–52.

Petitioner was wearing a bandana covering most of his face, but Pearson's face was exposed. *Id.* at 165–66. Petitioner knocked on the door, and when Craft opened the door, Petitioner pointed the gun at him. Dkt. No. 16–13 at 181–83; *see also* Dkt. No. 16–14 at 156–57. Petitioner forced his way into the apartment and began striking Craft with the gun, while asking him "where's it at." Dkt. No. 16–13 at 187; Dkt. No. 16–14 at 157. Pearson entered the

apartment behind Petitioner and stood at the door of a bedroom/living room, where Suppa was screaming. Dkt. No. 16–14 at 159, 162. Petitioner continued to strike Craft with the gun, forcing him farther into the apartment. Dkt. No. 16–13 at 190–91. One of the blows knocked open the cylinder of the gun, causing the bullets to fall out. Dkt. No. 16–13 at 190–93. Petitioner continued to ask Craft "where's it at," until Craft pointed to a leather coat, containing $200.00 and some small bags of marijuana in the pocket. *Id.* at 193–94. Petitioner took the coat, and fled with Pearson down a flight of stairs toward the street. *Id.* at 196–200. By the time Petitioner and Pearson left the apartment, Petitioner's face was no longer covered by the bandana. Dkt. No. 16–14 at 168–69. Meanwhile, a neighbor, Alicia Levitt ("Levitt"), had been getting ready to take a shower, when she heard children screaming and thumping sounds coming from Craft's apartment. *Id.* at 94, 98–100. When the noise got louder, she decided that she would go across the hall and investigate. *Id.* at 99. When she opened her front door, she saw Petitioner and Pearson leaving the apartment, both with their faces uncovered. *Id.* at 100–02. Craft identified Petitioner at trial. *Id.* at 197.

Petitioner was wearing a red and white jacket and was carrying a brown jacket, which Levitt recognized as belonging to Craft. *Id.* at 101–04. Petitioner and Pearson returned to their own apartment, where Pearson continued packing. *Id.* at 170. Pearson testified that, while fleeing from Craft's apartment, Petitioner did have the brown jacket, that she did not see him go through the pockets during their flight, and at some point during their flight and arriving at their apartment Petitioner no longer possessed the jacket. *Id.* However, Pearson did testify that Petitioner showed her a sandwich bag filled with marijuana representing it as the contents of the brown jacket. *Id.* at 168–70. Thereafter, Petitioner separated the marijuana into smaller bags. *Id.* at 170–71.

Utica police officers arrived at Craft's apartment soon after the incident and recovered .38 caliber bullets from the floor. *Id.* at 51, 57. Petitioner was arrested three weeks after the incident. At Petitioner's preliminary hearing, Craft and Levitt recognized Pearson in the courtroom and identified her as Petitioner's accomplice. Dkt. No. 16–13 at 206–07; Dkt. No. 16–14 at 110–13. Pearson was arrested the same day. Dkt. No. 16–13 at 7; Dkt. No. 16–14 at 174. After Pearson was arrested, she agreed to testify against Petitioner as a condition of her plea agreement. Dkt. No. 16–14 at 174.

Prior to trial, Petitioner was offered a plea, Dkt. No. 16–13 at 3, which he ultimately rejected, after two adjournments. Dkt. No. 16–9 at 4. The court then held both a *Sandoval* hearing and a *Wade* hearing. Dkt. No. 16–13 at 5, 47. Both hearings were resolved against Petitioner. *Id.* at 25; 53–54; Dkt. No. 16–9 at 4. In particular, after the *Sandoval* hearing, the court found that if Petitioner took the stand to testify, the prosecution could inquire into: (1) the underlying facts of Petitioner's 1992 youthful offender adjudication; (2) his 1999 conviction of criminal possession of a weapon in the third degree—which the Assistant District Attorney stated "satisfied various other charges in the indictment, including possession of a controlled substance in the seventh degree, and also, reckless endangerment"—and the facts underlying it; and (3) his conviction in 2002 in Monroe County, for possession of a controlled substance with the intent to sell. *Id.* at 53–54. The court found that these charges reflected Petitioner's willingness to place his own interests above those of society. *Id.* at 53. However, the court precluded any inquiry into Petitioner's 1998 misdemeanor drug conviction. *Id.* at 53–54.

Petitioner opted not to testify at trial. The trial lasted three days, and the witnesses against Petitioner included Craft, Dkt. No. 16–13 at 176–81; Suppa, *id.* at 309–46; Dkt. No. 16–14 at 1–17; Pearson, Dkt. No. 16–14 at 129–208; Levitt, *id.* at 91–129; Shannon Cabrera, one of

Suppa's children, *id.* at 17–33; Ballard, *id.* at 65–91; Shawn Ruddy, Patrolman for the Utica Police Department, *id.* at 33–50; and Stanley Fernalld, also a Patrolman for the Utica Police Department, *id.* at 50–65. The prosecutor also introduced Petitioner's own Grand Jury testimony against him through the Grand Jury Court Reporter, Cynthia Belmonte. Dkt. No. 16–13 at 281–305.

## C. Direct Appeal

Petitioner filed his direct appeal through counsel, raising the following issues: (1) the trial court's *Sandoval* ruling constituted an abuse of discretion; (2) the imposition of consecutive sentences was improper; and (3) Petitioner's sentences were unduly harsh and excessive and should be reduced. Dkt. No. 16–1 at 6. The prosecutor filed a memorandum of law in opposition to Petitioner's appeal. Dkt. No. 16–2 at 2. On April 30, 2010, the Appellate Division, Fourth Department denied Petitioner's appeal, finding that he failed to preserve his *Sandoval* claim, and that the sentencing claims had no merit. Dkt. No. 16–3 at 2; *People v. Fulton*, 72 A.D.3d 1609, 899 N.Y.S.2d 705 (4th Dep't 2010). The New York Court of Appeals denied leave to Appeal on December 14, 2010. Dkt. No. 16–5 at 2; *People v. Fulton*, 15 N.Y.3d 957 (2010).

## D. Section 440.10 Motion to Vacate

On October 11, 2011, the Oneida County Court received Petitioner's *pro se* motion to vacate his conviction, pursuant to N.Y. Crim. Proc. Law § 440.10. Dkt. No. 16–6 at 2. In his motion, Petitioner raised the following claims: (1) Petitioner was not afforded effective assistance of counsel during "plea negotiations" because his attorney did not guide him and encourage him to plead guilty in the face of overwhelming proof and a favorable plea bargain; (2) the Oneida

County Department of Corrections interfered with Petitioner's ability to consult with counsel because Petitioner was forced to meet with his attorney in a public holding area; and (3) trial counsel was ineffective when he failed to properly object to the court's *Sandoval* ruling. Dkt. No. 16–6 at 7–9.

On December 20, 2011, Judge Donalty denied Petitioner's section 440.10 motion to vacate, pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c), finding that Petitioner forfeited his ineffective counsel claim because the errors were record-based, and he should have raised the claims on direct appeal. Dkt. No. 16–9 at 3. In the alternative, Judge Donalty addressed the merits of Petitioner's claims and found that he received constitutionally effective assistance of trial counsel in all respects. *Id.* at 3–6. On March 19, 2012, the Appellate Division, Fourth Department denied Petitioner leave to appeal Judge Donalty's decision. Dkt. No. 16–11 at 2.

## E.  Report-Recommendation

In his petition, Petitioner raised the following claims: (1) he was denied his right to a fair trial due to the court's *Sandoval* ruling; (2) the imposition of consecutive sentences was "unconstitutional;" and (3) his trial counsel was ineffective by failing to properly discuss a plea proposal with Petitioner. Dkt. No. 9 at 2. In his Report-Recommendation, Magistrate Judge Baxter found that: (1) Petitioner's *Sandoval* claim is unexhausted, barred by procedural default, and is also not cognizable in a federal *habeas corpus* action, Dkt. No. 18 at 14; (2) Petitioner's claim regarding the constitutionality of the state court's imposition of consecutive sentences is unexhausted, barred by procedural default, not cognizable in a federal *habeas corpus* action, and does not implicate the Eighth Amendment, *id.* at 18–19; and (3) Petitioner's claim of ineffective assistance of counsel is procedurally barred, *id.* at 23.

**F.      Petitioner's Objections**

While Petitioner has conceded that his *Sandoval* claim is not cognizable in a federal

habeas petition and has withdrawn this claim, Dkt. No. 19 at 4, he has objected to Magistrate

Judge Baxter's Report-Recommendation on the following grounds:

I.    The Report-Recommendation is in error because Petitioner's
      constitutional claims were in fact exhausted and thus warrant this Court's
      habeas review;

II.   The Report-Recommendation ignores the illegality of Petitioner's
      imprisonment as a violation of Eighth Amendment;

III.  Magistrate Judge Baxter erred by not ordering an evidentiary hearing on
      the ineffective assistance of counsel claims once the state court failed to
      do so; and

IV.   Magistrate Judge Baxter erred in finding that Petitioner's claim is
      procedurally barred because he substantially complied with the relevant
      state law.

## III. DISCUSSION

**A.      Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the

district court makes a "*de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However,

when a party files "[g]eneral or conclusory objections or objections which merely recite the same

arguments [that he presented] to the magistrate judge," the court reviews those recommendations

for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16,

2011) (citations and footnote omitted). After the appropriate review, "the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)).

## B.     AEDPA

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), *cert. granted, judgment vacated and cases remanded on other grounds by,* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a claim
> adjudicated on the merits in state court only if the adjudication
> resulted in an outcome that: (1) was "contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States"; or (2) was
> "based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403 F. 3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed that

> a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362] at 405-406, 120 S. Ct. 1495 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state court's decision is an "unreasonable application of " clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F. 3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether a state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2009); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that "some increment of incorrectness beyond error" is required for the habeas court to grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

As the Second Circuit has further instructed, the necessary predicate for a federal habeas court's deferential review is that a petitioner's federal claim has been 'adjudicated on the merits' by the state court. *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003). "If a state court has not

adjudicated the claim 'on the merits,'" the federal habeas court applies the pre-AEDPA standards, and reviews *de novo* the state court disposition of the petitioner's federal claims. *Id.* (quoting *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir. 2001)). "[A] state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment.'" *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001)). To determine whether a state court has disposed of a claim on the merits, a court will consider: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Aparicio,* 269 F.3d at 93 (quoting *Sellan,* 261 F.3d at 314).

## C.      Exhaustion

A petitioner in custody pursuant to a judgment of a state court is entitled to federal habeas relief only if he has exhausted all available state-court remedies. *See* 28 U.S.C. § 2254(b)-(c). A claim has been exhausted if it was fairly presented in the state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509 (1971)). A petitioner need not have cited "book and verse on the federal Constitution" in his claim in state court for the claim to have been exhausted. *Picard*, 404 U.S. at 278 (quotation omitted). Rather, a petitioner may have fairly presented his claim to the state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the

> Constitution, and (d) allegations of a pattern of facts that is well
> within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of the State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).

As the Second Circuit has held, "to invoke 'one complete round of the State's established appellate review process', a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (quoting *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005)) (internal citation omitted). Applicants for leave to appeal must submit legal briefs and other documents to the New York State Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *See id.* (quotations omitted).

**D. Procedural Default**

Federal habeas review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729 (noting that the federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and legal state grounds) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." *Id.* (citation omitted). The independent and adequate state ground is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a habeas petition. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Instead, the federal court's scope of review is limited to the adequacy of the state law basis to bar its review. *See Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) ("Our task is not to determine whether [the state] ruling was correct, but to determine its adequacy to preclude federal habeas review"). The Second Circuit has typically assessed the adequacy of a "state ground of decision by examining whether the rule upon which the state court relied is firmly established and regularly followed." *Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011). However, in exceptional cases where a state court has engaged in an "exorbitant application of a generally sound rule," the independent state law grounds will be rendered inadequate to prevent review by the federal habeas court. *Id.* "To determine whether [a] case involves an exorbitant misapplication of a state rule, [a court will] look to see if the state's application serves a legitimate state interest." *Id.* "In evaluating the state interest in a procedural rule against the circumstances of a particular case," the Second Circuit has adopted three criteria which serve as guideposts in a courts evaluation:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003).

*Kozlowski v. Hulihan*, 511 Fed. Appx. 21, 25 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 446, 187 L. Ed. 2d 285 ( 2013).

**E.     Analysis**

*1. Sentencing*

Petitioner contends that Magistrate Judge Baxter incorrectly determined that he failed to exhaust his claim that his sentence was unduly harsh and severe, in violation of the Eighth Amendment. *See* Dkt. No. 19 at 5-9. Even if the Court were to agree with Petitioner as to this point, the outcome of the petition is still the same. After finding that Petitioner failed to exhaust this Eighth Amendment sentencing claim, Magistrate Judge Baxter recommended that the Court find, in the alternative, that the claim must fail on the merits. *See* Dkt. No. 18 at 18-20. As Magistrate Judge Baxter correctly determined, it is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." Dkt. No. 18 at 19; *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *Mayerhofer v. Bennett*, No. 02–CV–0074, 2007 WL 1624767, *7 (N.D.N.Y. June 6, 2007).

Petitioner's further objects to the Report-Recommendation, asserting that the imposition of consecutive sentences was an unreasonable application of state law in light of the facts of the case. *See* Dkt. No. 19 at 8. Petitioner contends that, contrary to the County Court's factual ruling, his crimes arose from the same set of circumstances so as to be part of one event; and, therefore, only the imposition of concurrent sentences was permitted under New York Penal Law § 70.25. *See id.*

As Magistrate Judge Baxter discussed, even if the Court were to consider Petitioner's allegations that the Eighth Amendment was implicated in his receipt of consecutive sentences, the result would be the same. The Eighth Amendment is only implicated in state-court sentencing if the sentence is barbaric or vastly disproportionate to the crime committed. *See Solem v. Helm*, 463 U.S. 277, 290 (1983). The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence. *See United States v. Aiello*, 864 F.2d 257,

265 (2d Cir. 1988); *Henry v. Lee*, No. 12-CV-5483, 2013 WL 1909415, at *11 (E.D.N.Y. May 8, 2013). Since the imposition of consecutive sentences, whether or not proper, is a matter of state law, the petition must be denied because the cumulative sentence imposed was not sufficient under the circumstances to implicate the Eighth Amendment. *See Rustici v. Philips*, 497 F. Supp. 2d 452, 470 (E.D.N.Y. 2007) (citations omitted); *Figueroa v. Grenier*, No. 02 Civ.5444, 2005 WL 249001, *15 (S.D.N.Y. Feb. 3, 2005); *Davis v. Herbert*, No. 02-CV-04908, 2003 WL 23185747, *15 (E.D.N.Y. Oct. 24, 2003) ("Whether the sentence could be consecutive was a matter of state law and raises no Constitutional issue"); *Heath v. Hoke*, No. 88-770E, 1989 WL 153759, *3 (W.D.N.Y. Dec. 7, 1989) ("[A] state court's interpretation of state law on concurrent and consecutive sentences is not a question of federal constitutional dimension cognizable in a federal habeas corpus proceeding"). "In order to violate the Eighth Amendment's prohibition on cruel and unusual punishment, a sentencing decision must present 'extraordinary circumstances.'" *Scullark v. Greiner*, No. 02CIV1834, 2005 WL 3454730, *4 (S.D.N.Y. Dec. 15, 2005) (citations omitted). No such circumstances are present.

While Penal Law § 70.25(2) requires concurrent sentences where the crimes committed arise out of the same acts or omission, where they arise out of actions that render the commission of each crime separately and distinctly committed, a court may impose consecutive sentences. *People v. Yong Yun Lee*, 92 N.Y.2d 987, 989 (1998); *People v. Sanchez*, 31 A.D.3d 1218 (4th Dept. 2006); *see also* N.Y. Pen. Law § 70.25(2). Under the N.Y. Penal Law, upon conviction of "a class B felony, the term must be at least five years and must not exceed twenty-five years. . . ," whereas upon conviction of "a class C felony, the term must be at least three and one-half years and must not exceed fifteen years . . . ." *See* N.Y. Pen. Law § 70.02(3)(a); N.Y. Pen. Law § 70.02(3)(b). Furthermore, "[t]he statute is quite clear that the periods of post-release supervision

are mandatory and are in addition to the determinate sentence of incarceration imposed." *Van Gorden v. Superintendent,* No. 9:03–CV–1350, 2007 WL 844901, *10 & n.15 (N.D.N.Y. Mar. 19, 2007) (quoting N.Y. Penal Law § 70.45(1)).

Here, Petitioner was convicted following a jury trial of two counts of Burglary in the First Degree, a class B felony under N.Y. Penal Law § 140.30, two counts of Robbery in the Second Degree, a class B felony under N.Y. Penal Law § 160.15, and one count of Robbery in the First Degree, a class C felony under N.Y. Penal Law § 160.10. Dkt. No. 16–9 at 2. Petitioner was sentenced as a second felony offender to consecutive sentences of twenty years in prison with five years of post-release supervision for the conviction premised on the two counts of Burglary in the First Degree and the one count of Robbery in the First Degree. Dkt. No.16–2 at 19.

Petitioner's sentence was well within the bounds of established New York Law. *See Yong Yun Lee*, 92 N.Y. 2d at 989. Since the state court properly found that Petitioner's sentences should run consecutive to each other, and because the sentence imposed for each specific crime was permissible under state law, Magistrate Judge Baxter correctly determined that Petitioner's Eighth and Fourteenth Amendment challenges to his sentence must fail. *See Untied States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988); *Henry v. Lee*, No. 12-CV-5483, 2013 WL 1909415, *11 (E.D.N.Y. May 8, 2013).

Based on the foregoing, the Court finds that Petitioner's claim that his sentence was excessive under the Eighth Amendment is without merit, and therefore, the Court denies the petition as to this claim.

### 2. Ineffective Assistance of Counsel

Petitioner contends that Magistrate Judge Baxter erred in finding that his ineffective assistance of counsel claims were procedurally barred. Section 440.10(2)(c) of the Criminal Procedure Law provides that "the court must deny a motion to vacate judgment . . . when [a]lthough sufficient facts appear on the record of the proceedings . . . no such appellate review . . . occurred owing to the defendant's . . . unjustifiable failure to raise such a ground or issues upon appeal[.]" The Second Circuit has held that a denial of a claim under CPL § 440.10(2)(c) constitutes a firmly established and regularly followed dismissal based upon adequate and independent state-law grounds. *See Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003).

Specifically, Petitioner asserts that his ineffective assistance of counsel claim is not record-based and that dismissal of his § 440.10 motion was not appropriate. Therefore, Petitioner contends that § 440.10(c) was not an independent and adequate state-law ground so as to procedurally bar this Court's Habeas review. Dkt. No. 19 at 9. Petitioner contends that this is evident from the fact that the record does not contain transcripts of the pretrial conference, held on March 3, 2008, wherein the matter was adjourned for a report on the plea offer, nor does it contain transcripts of the March 26, 2008 proceeding wherein Petitioner rejected the plea offer after the matter before the state court had been twice adjourned. *Id.* Petitioner alleges that these portions of the record are of paramount importance and value to his claim. *Id.* Petitioner also asserts that he substantially complied with the requirements of section 440.10(c). *Id.*

Magistrate Judge Baxter, however, correctly pointed out that Judge Donalty expressly relied upon assertions of fact made upon the apparently absent transcript in rendering his judgement upon Petitioner's section 440.10 motion to vacate. Dkt. No. 18 at 21. Petitioner has not fulfilled his statutorily mandated burden of rebutting this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). In fact, as Magistrate Judge Baxter

pointed out, Petitioner has not submitted any evidence in an attempt to meet this burden in his original filings or in his objections showing that his claim was unavailable to him when he filed his direct appeal. Dkt. No. 18 at 23. This Court further finds that Magistrate Judge Baxter correctly found that "[t]here is no indication that the application of the procedural default was exorbitant." *Id.*

Lastly, Petitioner has specifically objected to the Report-Recommendation asserting that Magistrate Judge Baxter erred by not ordering an evidentiary hearing on the ineffective assistance of counsel claims once the state court failed to do so. Dkt. No. 19 at 13. Section 2254 states that, where "the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim. . . ." 28 U.S.C. § 2254(e). However, a federal court may order an evidentiary hearing only under limited circumstances. *See id.* This Court finds that Petitioner's case does not fit into any of the outlined exceptions. Petitioner has not presented any evidence that could have been produced at a hearing to show that the outcome would be different. *See Santone v. Fischer,* 689, 689 F.3d 138, 156 (2d Cir. 2012); *Barnes v. Burge*, 372 Fed. Appx. 196, 202 (2d Cir. 2010) (citation omitted).

Therefore, Petitioner's ineffective assistance of counsel claim is procedurally barred and review by this Court is denied because Petitioner failed to show cause or prejudice, or that such an outcome would result in a fundamental miscarriage of justice.

### 3. *Newly Asserted Claims*

Petitioner newly asserts in his objections to the Report-Recommendation that the state court's imposition of consecutive sentences violated his due process rights—also seemingly alleging violations of his equal protection rights—under the Fourteenth Amendment. *See* Dkt.

No. 19 at 6–7.  This claim is utterly devoid of any support on the record and was not presented to the state courts.  As Petitioner has not afforded the state courts a "complete round" of review, his claim is deemed unexhausted, and is precluded from this Court's review.  Alternatively, because this Court finds that the imposition of Petitioner's sentence is within state law bounds, "[n]o federal constitutional issue is presented."  *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly,* 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd,* 875 F.2d 857 (2d Cir. 1989)) ("When a sentence is within this range, a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal").

### 4. *Certificate of Appealability*

The Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from — (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[2] 28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).  Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum-Decision and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal.

---

[2] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

*See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

# IV. CONCLUSION

After carefully considering Magistrate Baxter's Report-Recommendation, Petitioner's objections thereto and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Report-Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case.

**IT IS SO ORDERED.**

Dated: May 6, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge